UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) CIVIL ACTION NO._____ <br> CITY OF ARLINGTON, TEXAS, ) <br> ) COMPLAINT AND <br> Defendant. ) DEMAND FOR JURY TRIAL <br> ) | |

## COMPLAINT

Plaintiff, the United States of America (the "United States") alleges as follows:

### I.   NATURE OF ACTION

1. The United States brings this action to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq*. ("Fair Housing Act" or "FHA").  This action is brought on behalf of Commonwealth Development, Inc. ("CDI"), pursuant to 42 U.S.C. § 3612(o), following an investigation and charge of discrimination by the Department of Housing and Urban Development ("HUD") and an election by Defendant City of Arlington ("Arlington" or the "City") to proceed in federal court.  The United States also brings this action pursuant to 42 U.S.C. § 3614(a).

2. In 2016 and 2017, Arlington adopted and enforced a policy with respect to proposed Low-Income Housing Tax Credit ("LIHTC") developments in the City that included a "preference for new development of senior housing."  As explained in more detail below, Arlington applied this policy in a manner that blocked construction of a proposed affordable housing development in Arlington that would have been open to and occupied

1

by families with children. Through these actions, Arlington engaged in a pattern or practice of discrimination on the basis of familial status and violated the Fair Housing Act.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3612(o) and 3614(a).

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events or omissions giving rise to the United States' claims occurred in this judicial district and because the defendant is located in this judicial district.

## III. PARTIES

5. Arlington was incorporated in 1884 and is a municipality of the State of Texas, located within the Northern District of Texas.

6. Arlington has a city-manager form of government, which authorizes the City Council (the "Council") to function as a legislative body. The elected officials include a Mayor and eight district representatives.

7. Complainant CDI is a housing development company based in Bryan, Texas. Elaina Glockzin is CDI's president/owner and Emanuel Glockzin is CDI's developer/owner.

## IV. THE ALLOCATION OF LOW-INCOME HOUSING TAX CREDITS IN THE STATE OF TEXAS AND THE CITY OF ARLINGTON

### A. *The Low-Income Housing Tax Credit*

8. The Low-Income Housing Tax Credit ("LIHTC"), codified at 26 U.S.C. § 42, is a federal tax credit that provides incentives for the construction and rehabilitation of affordable rental housing for low-income residents.

9. LIHTCs are allocated by state agencies to developers of low-income housing who sell rights to the future tax credits for current equity to fund development costs.  In exchange for the credits, Texas LIHTC properties must maintain a set percentage of rent-and-income restricted units for a minimum of 30 years.

10. Two types of tax credits are available to developers of LIHTC projects.  Nine percent tax credits ("9% tax credits" or "9% LIHTCs") are generally reserved for new construction and are highly competitive.  Four percent tax credits ("4% tax credits" or "4% LIHTCs") are typically used for rehabilitation projects and new construction financed with tax-exempt bonds.  Both types of tax credits are allocated to applicants by state housing finance agencies pursuant to a public plan, called a Qualified Allocation Plan ("QAP").

11. Under the FHA, 42 U.S.C. § 3604(a)-(d), housing developments are prohibited from discriminating against families with children under 18 years of age unless they meet one of the designated exemptions from this prohibition for "housing for older persons" set forth at 42 U.S.C. § 3607(b)(2)(A)-(C).  Accordingly, developments supported by LIHTCs must accept families with children unless they qualify as "housing for older persons" under the FHA.

12. In Texas and elsewhere, LIHTC developers, state housing finance agencies, and local governments commonly use the terms "senior" or "elderly" to refer to proposed LIHTC developments that qualify as "housing for older persons," and that therefore would not be required to accept families with children.  Such persons and entities often use the terms "general," "workforce," or "non-elderly" to refer to proposed LIHTC developments that do not qualify as "housing for older persons" under the FHA, and therefore would be required to accept families with children.

B. **The Allocation of LIHTCs in Texas**

13. At all times relevant to this action, the Texas Department of Housing and Community Affairs (the "TDHCA") has allocated LIHTCs in Texas to eligible applicants pursuant to Texas's QAP.

14. At all times relevant to this action, Texas has allocated LIHTCs among 13 state service regions. Arlington is part of "Region 3/Urban: Dallas-Fort Worth" ("Region 3/Urban"). There are separate statutorily-mandated set-asides for "at risk," nonprofit, and Department of Agriculture assisted developments.

15. At all times relevant to this action Texas has used the following general process to determine how to allocate 9% LIHTCs in a region. First, applicants self-score their applications based on the QAP criteria, which can change from year to year. Then, the TDCHA scores and ranks each proposed project within each region or set-aside based on the criteria in the QAP. After scoring, the TDCHA typically awards the available tax credits for each region or set-aside to the applicants with the highest scoring projects.

16. At all times relevant to this action, the Texas QAP scoring criteria has awarded points to applications for 9% LIHTC developments that the applicable local government has supported by either issuing: (1) a Resolution of Support indicating that the local government supports the development receiving LIHTCs; or (2) a Resolution of No Objection indicating the local government has no objection to the development being allocated LIHTCs. Because of the highly competitive nature of the process for awarding 9% LIHTCs under the Texas QAP, as a practical matter it is very difficult for a project to score high enough to be awarded 9% LIHTCs without a Resolution of Support or a Resolution of No Objection.

C. **The Allocation of LIHTCs in Arlington**

17. At all times relevant to this action, the Council has been the governing body that issues Resolutions of Support or Resolutions of No Objection in connection with proposed LIHTC developments in Arlington.

18. At all times relevant to this action, the Council has relied on its four-member Community and Neighborhood Development committee ("CND"), to review requests for Resolutions in connection with proposed LIHTC developments, conduct site visits, and make recommendations the full Council regarding which LIHTC developments the City should support.

19. At all times relevant to this action, proposed LIHTC projects in Arlington have not scored high enough to obtain 9% tax credits from the TDCHA without either a Resolution of Support or a Resolution of No Objection from the Council.

20. As of the 2017 application cycle, no workforce housing supported by 9% LIHTCs had been developed in Arlington since 1998, and no workforce housing supported by 4% LIHTCs had been developed in Arlington since 2011.

D. **The 2017 Application Cycle**

21. For the 2017 competitive application cycle, Texas allocated Region 3/Urban approximately $12.5 million in LIHTCs. Texas imposed a state cap of approximately $5 million for tax credits on the Region's elderly projects. Therefore, approximately $7.5 million in LIHTCs, approximately 60% of the Region's total allocation, was allocated exclusively for workforce housing.

22. Under the Texas QAP that was in effect in 2017 ("the Texas 2017 QAP"), the maximum number of points a project could receive was 171 points.

23. Under the Texas 2017 QAP, proposed projects could earn 17 points for a Resolution of Support from the local government and 14 points for a Resolution of No Objection from the local government.  There was no limit to the number of projects for which a local government could issue a Resolution of Support or a Resolution of No Objection.

## V. DEFENDANT'S DISCRIMINATORY HOUSING PRACTICES

### A. *Arlington's 2016 Housing Tax Credit Review Policy*

24. In 2016, the City adopted a new housing tax credit review policy that disfavored the development of new workforce housing.

25. In 2016, anticipating that Region 3/Urban would be receiving a significant LIHTC allocation for the 2017 application cycle, the CND held meetings to discuss a new housing tax credit review policy that the City could apply in the 2017 application cycle.

26. During these meetings, city officials made comments reflecting their intent that any new development of affordable housing in Arlington developed through LIHTCs should be limited to senior housing rather than workforce housing that would be open to families with children.  For example, on September 20, 2016, at a public CND meeting, Councilmember Charlie Parker, after expressing unhappiness with an older workforce housing development in his district, said he wanted the City to "move away from this particular genre of housing".  On October 11, 2016, Deputy City Manager James Parajon stated during a public CND meeting that he preferred not to "encourage new tax credits for non-senior.  If it is non-senior then it has to be redevelopment."  And on October 25, 2016, Councilmember and CND Chair Lana Wolff stated during a public CND meeting at which the CND approved the policy of favoring the development of senior housing over workforce housing: "the community said 'I don't want to live next to a three-year

old; the only thing worse than living next to a three-year-old is living next to an eight-year-old,' so they wanted senior housing."

27. On or about October 25, 2016, CND adopted a proposed housing tax credit review policy, to be approved by the full council.

28. On November 29, 2016, the City adopted a Housing Tax Credit Review Policy (the "2016 Policy") consistent with the policy recommended by the CND.

29. The 2016 Policy lists five criteria that the City will apply to determine if it will issue a Resolution of Support or a Resolution of No Objection in connection with a proposed LIHTC project.  The fourth criterion is: "The City has a preference for new development of senior housing or redevelopment of senior and/or workforce housing."

30. The 2016 Policy's preference for "the new development of senior housing" over the development of workforce affordable housing was not consistent with the City's assessment of its housing needs.  The City's 2015-2019 Consolidated Plan, which the City was required to submit to HUD in order to obtain HUD funding for housing and community development programs, made clear that the City had an unmet need for affordable housing, particularly for its non-elderly residents.  The Consolidated Plan reported that there were 12,465 low-to-moderate-income renter households in the City who were paying more than 50% of their income for housing, of which 10,930 (almost 88%) were non-elderly households.  As noted in paragraph 21 above, the Texas QAP had already determined that there was a need for workforce housing in the region where Arlington is located and that 60% of the LIHTCs for that region should be reserved for workforce housing.

B. *CDI's Proposal for the Cooper Street Apartments*

31. On October 25, 2016, CDI applied to the City for rezoning to build the Cooper Street Apartments (hereinafter "the Cooper Street Project"), a 104-unit affordable non-elderly multi-family apartment complex to be located in the 7800 block of S. Cooper Street, Arlington, 76001, with the City's Planning & Zoning Department.

32. On January 6, 2017, CDI submitted its pre-application to the TDHCA for an allocation of $1.5 million 9% LIHTCs for the Cooper Street Project.

33. CDI's TDCHA pre-application self-score was 124 out of 171 possible points available in the Texas 2017 QAP scoring system.

34. On January 13, 2017, CDI submitted to the City its request that the City issue a Resolution of Support or a Resolution of No Objection in connection with the Cooper Street Project.

35. In its January 13, 2017 submission, CDI told the City that the development would be workforce housing that would serve the general population, including families with children, and that the development would include 24 one-bedroom units, 56 two-bedroom units, and 24 three-bedroom units.

36. In its submission to the City, CDI committed that 88 of the 104 units would be affordable to persons making 60% or below the median family income ("MFI"). CDI's commitment would have resulted in 20 of the 24 one-bedroom units being available at or below 60% of MFI; 48 of the 56 two-bedroom units being available at or below 60% of MFI; and 20 of the 24 three-bedroom units being available at or below 60% of MFI.

37. CDI's submission to the City stated that "Cooper Street Apartments would serve the working-class families of Arlington, who struggle to keep their housing cost at under 30% of their household income."

38. In a January 25, 2017 email to Councilmember Sheri Capehart, the councilmember whose district includes the site of CDI's proposed development, CDI informed the Council that its project was "the second-highest scoring multi-family [workforce] project development [requesting 9% tax credits] in [Region 3 Urban: Dallas/Fort Worth], and would get funded if approved by [C]ouncil."

39. The Cooper Street Project, and the residential units that were to be contained therein, were "dwellings" within the meaning of 42 U.S.C. § 3602(b).

C. *Arlington's Discriminatory Conduct with Respect to the Cooper Street Project*

40. In the 2017 competitive application cycle, Arlington received eight requests for Resolutions of Support or Resolutions of No Objection for projects requesting 9% tax credits.  Of the eight proposed projects, CDI's project was the only one that proposed the new construction of workforce housing.

41. At meetings on  January 23 and January 31, 2017, the CND discussed the requests for resolutions supporting proposed 9% LIHTC developments.  At the January 23, 2017 CND meeting, Councilmember Charlie Parker stated he would not support issuing a Resolution of Support or a Resolution of No Objection for the Cooper Street Project because it was "kind of in violation of our City requirements…[and] doesn't work for us right away, so I think [I] could make a determination on that one without taking a look at it.  It just doesn't fit the criteria."

42. On February 14, 2017, the Council issued Resolutions for two 9% tax credit developments, both of which were for seniors. Both of these proposed developments were designed to be "intended for and operated for occupancy by persons 55 years of age or older" within the meaning of the exemption for housing for older persons set forth in 42 U.S.C. § 3607(b)(2)(C), and therefore would not have been required to accept families with children. The pre-application self-score for one of these senior developments was 119, lower than that of the Cooper Street Project, while the pre-application self-score for the other senior development was 124, the same as that of the Cooper Street Project.

43. The Council declined to issue a Resolution of Support or a Resolution of No Objection for the Cooper Street Project. The Council's decision was based on the 2016 Policy, which favored the development of new senior housing over the development of new workforce housing.

44. In 2017, there were 39 pre-applications for workforce tax credit projects in Region 3/Urban. Of the 39 projects, CDI's project was the second-highest scoring pre-application in Region 3/Urban.

45. The TDHCA ultimately awarded 9% tax credits to four applications for non-elderly or general/workforce projects in Region 3/Urban, but not in the City of Arlington, that were submitted as part of the 2017 application cycle deadline. Of these four awarded projects, all but one had a lower pre-application score than the pre-application score for the Cooper Street Project.

46. Because CDI did not receive a Resolution of Support or a Resolution of No Objection from the Council, it did not score high enough to obtain 9% LIHTCs from TDCHA.

47. On November 5, 2019, the Council amended the 2016 Policy. The revised policy does not include any preference for senior housing.

## VI. HUD ADMINISTRATIVE PROCESS

48. On or about May 2, 2017, CDI filed a timely Housing Discrimination Complaint against Arlington, with HUD. The complaint was amended on or around January 5, 2018 to clarify the violation alleged.

49. Pursuant to 42 U.S.C. § 3610, the Secretary of HUD completed an investigation of the complaint, attempted conciliation without success, and prepared a final investigative report.

50. Based upon the information gathered in the investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g)(1), determined that reasonable cause existed to believe that Arlington violated the Fair Housing Act.

51. On September 23, 2020, the Secretary issued a Charge of Discrimination, pursuant to 42 U.S.C. § 3610(g)(2)(A), charging Arlington with engaging in discriminatory housing practices on the basis of familial status.

52. On October 7, 2020, Arlington elected to have the claims asserted in the HUD Charge resolved in a civil action pursuant to 42 U.S.C. § 3612(a). On October 8, 2020, the Administrative Law Judge issued a Notice of Election to Proceed in United States Federal District Court and terminated the administrative proceeding on CDI's complaint.

53. Following this Notice of Election, the Secretary of HUD authorized the Attorney General to commence a civil action pursuant to 42 U.S.C. § 3612(o).

54. The United States and the Defendant entered into successive agreements tolling the expiration of the statute of limitations under 42 U.S.C. § 3612(o) through January 31, 2022.

## VII.  CLAIMS FOR RELIEF

### First Claim: 42 U.S.C. § 3612(o)

55. The United States incorporates the allegations as set forth above.

56. Through the conduct described above, Defendant has:

    (a) made housing unavailable because of familial status, in violation of 42 U.S.C. § 3604(a); and

    (b) coerced, intimidated, threatened or interfered with one or more persons in the exercise or enjoyment of, or on account of such person(s) having exercised or enjoyed, or on account of such person(s) having aided or encouraged any other person in the exercise or enjoyment of, a right granted or protected by the FHA, in violation of 42 U.S.C. § 3617.

57. Defendant's conduct, as described above, constitutes one or more "discriminatory housing practice[s]" within the meaning of 42 U.S.C. § 3602(f).

58. CDI is an aggrieved person as defined by 42 U.S.C. § 3602(i) and has been harmed by Arlington's conduct.  Because of Arlington's unlawful conduct, CDI was not able to develop the Cooper Street Project.

59. The discriminatory actions of the Defendant were intentional, willful, and taken in disregard of the rights of others.

### Second Claim: 42 U.S.C. § 3614(a)

60. The United States incorporates the allegations as set forth above.

61. Defendant's conduct, as described above, constitutes:

    a. A pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3619, in violation of 42 U.S.C. § 3614(a); and

    b. A denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3619, which raises an issue of general public importance, in violation of 42 U.S.C. § 3614(a).

64. In addition to CDI, other persons or entities may have been injured by Defendant's discriminatory housing practices as described above. These persons or entities are also "aggrieved persons" under the Fair Housing Act, 42 U.S.C. § 3602(i).

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that this Court enter an order that:

    1. Declares that Defendants' actions, policies and practices, as alleged herein, violate the Fair Housing Act;

    2. Enjoins Defendants, their agents, employees and successors, and all other persons in active concert or participation with them, from:

        (a) Continuing to engage in any discriminatory housing practice in violation of the Fair Housing Act;

        (b) failing or refusing to take such steps as may be necessary to restore, as nearly as practicable, CDI and any other person harmed by Defendant's unlawful practices to the position they would have been in but for the Defendant's discriminatory housing practices; and

        (c) failing or refusing to take such steps as may be necessary to prevent the recurrence of any discriminatory housing practice in the future

and to eliminate, to the extent practicable, the effects of Defendants' discriminatory housing practices.

3.  Awards monetary damages to CDI under 42 U.S.C. §§ 3612(o)(3), 3613(c)(1), and 3614(d)(1)(B), and to any other aggrieved person under 42 U.S.C. § 3614(d)(1)(B);

4.  Assesses a civil penalty against each Defendant to vindicate the public interest in an amount authorized by 42 U.S.C. § 3614(d)(1)(C) and 28 C.F.R. § 85.5; and

5.  Awards such additional relief as the interests of justice may require.

## JURY DEMAND

The United States hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: January 13, 2022

Respectfully submitted,

MERRICK B. GARLAND
Attorney General

CHAD E. MEACHEM
United States Attorney
Northern District of Texas

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief

TIMOTHY J. MORAN
Deputy Chief

*/s/ Tami C. Parker*
TAMI C. PARKER, TX Bar No. 24003946
Assistant United States Attorney
United States Attorney's Office
Northern District of Texas
Burnett Plaza, Suite 1700
801 Cherry Street, Unit #4
Fort Worth, TX  76102
Phone: (817) 252-5230
Fax: (817) 252-5458

*/s/ Willistine Tarsha Harris*
MARTA CAMPOS, DC Bar No. 440680
WILLISTINE TARSHA HARRIS,
DC Bar No. 1735388
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. – 4CON
Washington, D.C.  20530

tami.parker@usdoj.gov

Phone: (202) 514-4713  
Fax: (202) 514-1116  
marta.campos@usdoj.gov  
willistine.harris@usdoj.gov

*Attorneys for Plaintiff United States*

## CERTIFICATE OF SERVICE

On January 13, 2022, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Tami C. Parker  
Tami C. Parker  
Assistant United States Attorney

Katie Anderson  
Attorney for City of Arlington, Texas  
Clark Hill Strasburger  
901 Main Street  
Suite 6000  
Dallas, TX  75202